NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

LINDA B., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, L.J., A.B., E.P., *Appellees.*

No. 1 CA-JV 17-0361
FILED 4-26-2018

Appeal from the Superior Court in Maricopa County
No. JD509589
The Honorable Timothy J. Ryan, Judge

**AFFIRMED**

COUNSEL

Law Office of H. Clark Jones, LLC, Mesa
By H. Clark Jones
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Nicholas Chapman-Hushek
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge James P. Beene delivered the decision of the Court, in which Presiding Judge Jon W. Thompson and Judge Peter B. Swann joined.

---

**B E E N E**, Judge:

¶1          Linda B. ("Mother") appeals the termination of her parental rights to her three children, L.J., A.B., and E.P. (collectively "the children"). For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2          In September 2011, the Department of Child Safety ("DCS") took L.J. and his sibling, D.W., into custody after D.W. tested positive for marijuana at birth.  DCS filed a dependency petition alleging Mother was unable to parent due to substance abuse, neglect, and mental health issues.

¶3          During the pendency of the case, DCS provided Mother with services, including substance abuse assessment and treatment, parent aide services, urinalysis testing, transportation, supervised visitation, psychological consultation and evaluation, and referrals to community resources.  In October 2012, Mother was diagnosed with Borderline Intellectual Functioning and Cannabis Dependence in Partial Remission.  In April 2013, DCS moved to terminate Mother's parental rights to L.J. and D.W. based on mental deficiency and fifteen months out-of-home placement.  Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(3) and -533(B)(8)(c).  At the time of filing, Mother had consented to adoption of D.W.  Mother's parental rights as to D.W. were severed in July 2013.

¶4          Mother gave birth to A.B. in July 2013, and DCS immediately took her into custody and filed a dependency petition.  Over the next year, Mother began engaging in services.  She completed her parent aide services and made progress in drug treatment.  Both A.B. and L.J. were returned to Mother's physical custody in January 2015.  The dependency actions as to both A.B. and L.J. were dismissed in March 2015.

¶5          In June 2015, Mother relapsed with marijuana and admitted that she was taking oxycodone for lower back pain.  Mother's home was also not safe or appropriate for the children.  DCS filed a dependency petition as to A.B., L.J., and E.P. (born February 2015), alleging Mother was

unable to parent due to substance abuse, neglect, mental health issues, prior dependencies, and prior termination of parental rights.

¶6            DCS again provided Mother with services, including parent aide, facilitated visitation, urinalysis testing, substance abuse assessment and treatment, psychological and psychiatric evaluation, individual counseling, case management, and transportation. The children were found dependent as to Mother in February 2016. DCS filed a petition to terminate the parent-child relationship on the grounds of fifteen months time in care as to all three children and prior removal as to A.B. and L.J. A.R.S. § 8-533(B)(8)(c) and -533(B)(11). The court held a three-day termination hearing in April and June of 2017 and subsequently terminated Mother's parental rights.

¶7            The superior court found that DCS made reasonable, diligent efforts to provide Mother with proper reunification services. The court further found that despite all the services DCS provided, Mother had been unable to remedy the circumstances that caused the children to be in an out-of-home placement, specifically that Mother failed to obtain stable housing and employment and adequate support mechanisms. The court determined that there was a substantial likelihood that Mother would not be capable of exercising proper and effective parental care and control in the near future. The court also determined that DCS proved by a preponderance of the evidence that termination was in the children's best interests.

¶8            Mother filed a timely notice of appeal. We have jurisdiction pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 8-235(A), 12-120.21(A)(1), and -2101(A)(1).

**DISCUSSION**

I.    **Standard of Review**

¶9            The right to parent one's child is fundamental but not absolute. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). The superior court may terminate parental rights if it finds, "by clear and convincing evidence, at least one of the statutory grounds set out in section 8-533," and by a preponderance of the evidence that termination is in the best interests of the child. *Michael J. v. Ariz. Dep't of Econ. Sec.*, 196 Ariz. 246, 248-49, ¶ 12 (2000); *Kent K.*, 210 Ariz. at 284, ¶ 22.

¶10           "[W]e view the evidence and reasonable inferences to be drawn from it in the light most favorable to sustaining the court's decision,"

*Jordan C. v. Ariz. Dep't of Econ. Sec.*, 223 Ariz. 86, 93, ¶ 18 (App. 2009), and we will not reverse unless there is no reasonable evidence to support the order, *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). Because the superior court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and make appropriate findings," we will accept its findings of fact unless no reasonable evidence supports them. *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 280, ¶ 4 (App. 2002).

## II. Sufficient Evidence Supports Severance

¶11 Mother argues insufficient evidence supports the superior court's order severing her parental rights. To meet its burden under A.R.S. § 8-533(B)(8)(c), DCS was required to prove: (1) the children had been in an out-of-home placement for at least fifteen months; (2) DCS has "made diligent effort to provide appropriate reunification services;" (3) "the parent has been unable to remedy the circumstances" causing the out-of-home placement; and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."[1]

### A. Diligent Effort to Provide Appropriate Reunification Services

¶12 Mother argues DCS did not take the necessary steps to ensure she was provided with a timely psychological evaluation and there was an unreasonable delay between the psychological evaluation and individual counseling.

¶13 DCS must provide a parent "with the time and opportunity to participate in programs designed to help her become an effective parent[.]" *Maricopa Cty. Juvenile Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). DCS must "undertake measures with a reasonable prospect of success[,]" *Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999), but it "is clearly not obligated to provide services which are futile[,]" *Pima Cty. Severance Action No. S-2397*, 161 Ariz. 574, 577 (App. 1989).

¶14 At the termination hearing, DCS case manager Jamie Hayek testified that DCS referred Mother for a psychological evaluation shortly after the children were taken into care in June 2015, even though Mother

---

[1] Mother does not challenge the superior court's finding that A.B., L.J., and E.P. had been in out-of-home placements for at least fifteen months. Thus, we do not address it.

had not demonstrated 30 days of sobriety. Mother completed the evaluation in October 2015. Hayek stated that it is common to experience a three to four-month delay between the time that the referral for a psychological evaluation is made and the time that it is carried out. The case manager further testified that DCS asked Mother to self-refer for a psychiatric evaluation, which she failed to do, and DCS eventually made a referral for her. Mother completed the psychiatric evaluation well before the termination hearing. Additionally, as the superior court noted, Mother successfully completed individual counseling before the termination hearing.

¶15 Mother fails to demonstrate how the delays in mental health services prejudiced her. She does not suggest that DCS's failures prevented her from achieving her parenting goals, or that she was not provided enough time to successfully complete the services offered. The record shows that Mother was afforded ample time to participate in and complete mental health services. In addition, she was provided with a parent aide, case aide, supervised visits, transportation, and drug evaluation and treatment. The record provides ample support for the superior court's finding that DCS made diligent efforts to provide Mother with appropriate reunification services.

### B. Unable to Remedy Circumstances Causing Out-of-Home Placement

¶16 The superior court found that Mother was unable to remedy the circumstances causing the children to be in out-of-home placement due to her inability to obtain stable housing, employment and adequate support mechanisms. Based on the record, we agree.

¶17 During the dependency, Mother lost her apartment. Mother testified she chose not to renew her lease because she wanted to find a larger place to live. However, Mother admitted that she was not offered a new lease because E.P.'s father was living with her at the time and smoked marijuana while residing with her.

¶18 At the time of the termination hearing, Mother resided with a friend, Michelle Goree in a two-bedroom two-bathroom house. Goree testified that Mother could reside with her until she found permanent housing. However, DCS was unable to conduct a home study because Goree was out of town for a month prior to the termination hearing. Mother did not make any progress in securing permanent housing for herself. Mother testified that it is difficult for her to find housing because of her

felony conviction. This problem will be ongoing and may be exacerbated as Mother owes $18,000 in restitution and was delinquent on her payments at the time of the severance trial.

¶19 Mother collects approximately $700 per month in social security disability benefits and claims this is enough to support the children. Substantial evidence to the contrary exists in the record. Mother was locked out of her apartment because she could not afford her monthly rent payment and resorted to pawning property several times to pay her rent. Mother failed to provide DCS with proof of her social security payments and she attempted to solicit fraudulent paystubs on Facebook during the pendency of the case.

¶20 Though Mother's counselor testified she has learned some support mechanisms to help with her behavioral issues, the record shows that they are insufficient. The counselor stated that Mother displayed unhealthy behavioral outbursts during treatment. After discontinuing counseling, Mother expressed to a parent aide that she wanted to kill herself. She self-referred to counseling at the request of DCS, but she did not attend her scheduled session. Hayek testified that she is concerned Mother will relapse again because Mother did not complete recovery maintenance and still associates with E.P.'s father, who frequently uses marijuana. Additionally, though Mother completed Terros, she missed numerous sessions and drug tests. Mother did not successfully complete parent aide because she consistently had issues communicating with E.P.'s father during the sessions and the parent aide reported repeated concerns about the cleanliness of Mother's house and the safety of the house for the children.

¶21 L.J. and E.P. have special needs and require extra care. Hayek testified that she is unsure how Mother will arrange transportation to the children's doctor's appointments as she has been dependent on DCS for transportation. Hayek also testified Mother did not fully engage in L.J.'s services because she either did not understand what was being discussed or did not care to listen. Hayek stated that the children's special needs would require a great deal of parenting skill which will be difficult for Mother to handle.

¶22 Reasonable evidence supports the superior court's findings that Mother failed to rectify the problems that caused the children to be placed in care. The record also supports the court's determination that Mother lacks stable housing, stable employment and adequate support mechanisms.

### C. Substantial Likelihood Mother Will Not be Capable of Exercising Proper and Effective Parental Control in Near Future

**¶23** Mother argues the superior court lacked sufficient evidence to find that she will not be capable of exercising proper and effective parental control in the near future. We disagree. The record shows that Mother was not able to obtain appropriate housing in the months leading up to the termination hearing, nor has she been able to demonstrate stable employment throughout the pendency of the case. Though Mother made some progress in counseling, the DCS case manager testified that Mother did not complete recovery maintenance and is at risk for relapse. Substantial evidence in the record supports the finding that Mother will not be capable of exercising proper and effective parental control in the near future.

**¶24** Accordingly, the superior court did not abuse its discretion in terminating Mother's parental rights under A.R.S. § 8-533(B)(8)(c).[2]

### III. Best Interests

**¶25** Mother contends the superior court erred in finding that the termination was in the children's best interests. "Whether severance is in the child's best interests is a question of fact for the juvenile court to determine[,]" and we draw all reasonable inferences in favor of the superior court's findings. *Jesus M.*, 203 Ariz. at 282, ¶ 13.

**¶26** "While the severance-ground inquiry focuses on the parent, the best-interests inquiry primarily focuses on the child." *Alma S. v. Dep't of Child Safety*, 778 Ariz. Adv. Rep. 24, ¶ 14 (App. Nov. 14, 2017). "Best interests is a fact-specific, case-by-case determination in which the court balances a parent's interest in maintaining a relationship with his or her child (diluted by the existence of a severance ground) against the child's interest in a safe and stable home life." *Id.* A severance must either affirmatively benefit the child or eliminate a detriment of the parental relationship. *Dominique M. v. Dep't of Child Safety*, 240 Ariz. 96, 98, ¶ 8 (App. 2016).

---

[2] Because we find that the superior court did not err in terminating Mother's parental rights under A.R.S. § 8-533(B)(8)(c), we need not address the court's termination of Mother's rights under § 8-533(B)(11). *See Michael J.*, 196 Ariz. at 251, ¶ 27 (if appellate court affirms one statutory basis, it need not address other statutory bases for termination).

¶27 The superior court's finding that severance was in the children's best interests is supported by a preponderance of the evidence. Hayek testified that A.B. and E.P. have been in stable adoptive placements for most of their lives, and removal from these placements would be traumatic. Further, Hayek testified that E.P. and L.J.'s foster care placements are meeting their special needs. A.B. is currently placed with her brother and has a strong bond with her foster family. The superior court found that the children will benefit from the stability provided by severance and would suffer a detriment if the unstable relationship with Mother was to continue. Accordingly, the court did not err in finding that terminating Mother's parental rights was in the children's best interests.

## CONCLUSION

¶28 Accordingly, we affirm the superior court's termination of Mother's parental rights to the children.



AMY M. WOOD • Clerk of the Court
FILED:  AA